```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

ATLANTIC SOUNDING CO., INC., ET          CIVIL ACTION
AL

VERSUS                                   NO: 12-1260

MAURICE FENDLASON                        SECTION: "J"(1)
```

### ORDER AND REASONS

Before the Court is Defendant/Counterclaimant, Maurice Fendlason's Motion for Reconsideration and/or New Trial **(Rec. Doc. 25)** and Plaintiff/Counterdefendants' opposition thereto (Rec. Doc.29). Plaintiffs' motion was set for hearing on April 10, 2013. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Defendant's motion should be **DENIED** for reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On May 15, 2012, Plaintiffs, Atlantic Sounding Co., Inc ("Atlantic Sounding Co.") and Weeks Marine, Inc. ("Weeks Marine"), filed suit pursuant to 28 U.S.C. § 2201 seeking a declaratory judgment finding that they do not owe Maurice Fendlason ("Mr. Fendlason") maintenance and cure benefits. (Rec. Doc. 1) Plaintiffs

allege that they were asserting an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and that subject matter jurisdiction is based on 28 U.S.C. § 1333. Plaintiffs also allege that Atlantic Sounding Co. is Mr. Fendlason's payroll employer and that Weeks Marine is both Atlantic Sounding Co.'s parent corporation and the owner of the vessel involved in the litigation, crane barge 547. (Rec. Doc. 1, p. 2, ¶ 3) Plaintiffs allege that Mr. Fendlason commenced employment with Atlantic Sounding Co. and/or Weeks Marine as a second mate/AB seaman on the crane barge 547 on or about March 15, 2012 and was scheduled to work 28 days on and 14 days off.

Plaintiffs allege that on or about April 5, 2012, only 21 days into his 28 day hitch, Mr. Fendlason contacted Patrick Richardson, an administrative clerk, advised that he was going home because of a family emergency, and deserted/abandoned the crane barge 547 by not completing his 28 days on. Plaintiffs further allege that Mr. Fendlason failed to return to crane barge 547 on April 26, 2012, which would have been his scheduled return to work date, had he completed his 28 day hitch. Evidently, Mr. Fendlason filed a claim for maintenance and cure benefits at some point thereafter. Plaintiffs allege that Mr. Fendlason did not report suffering any accident or injury while in the service of the crane barge 547 either to his co-workers or supervisors, before he left crane barge

547 on April 5, 2012. Plaintiffs further allege that Mr. Fendlason failed to provide any medical documentation or evidence that supports or suggests that he (a) sustained any accident or injury while in the service of the crane barge 547 or (b) is currently suffering from an illness or injury that manifested itself while he was in the service of crane barge 547. Based on these allegations, Plaintiffs sought a declaratory judgment finding that they were justified in denying Mr. Fendlason's claim for maintenance and cure benefits.

In their complaint for declaratory judgment, Plaintiffs stated that they believed Mr. Fendlason was represented by Paul Lea, Jr. ("Mr. Lea") and that Mr. Fendlason's last known address was 18547 Easterbrook Road, Pontchatoula, Louisiana, 70454-4845 ("the Easterbrook Road address").  Plaintiffs left the complaint for declaratory judgment at the Easterbrook Road address with Mr. Fendlason's mother, Hilda Foster, on May 23, 2012. (Rec. Doc. 5) On July 17, 2012, Mr. Fendlason filed an answer, through Mr. Lea, in which he asserted that the Easterbrook Road address was not his address but rather his mother's address where he occasionally receives mail. (Rec. Doc. 6, p. 2, ¶ 4) Mr. Fendlason did not provide his  address in his answer, instead instructing Plaintiffs to refer to the address of his attorney, Mr. Lea, listed under the signature block of his answer. (Rec. Doc. 6, p. 2, ¶ 4) Mr.

Fendlason also denied Plaintiffs' allegation that on April 5, 2012 he told Patrick Richardson he was leaving for a family emergency and abandoned crane barge 547. (Rec. Doc. 6, p. 2, ¶ 7) Instead, he claims that on March 28, 2012, he advised his superior on the barge to which he was assigned that he had been injured on the job and needed to attend to the injury. (Rec. Doc. 6, p. 2, ¶ 7) He also claims that upon leaving the barge, he traveled to the safety officer's office, that the safety officer was not present, and that he left his name and his number with the personnel there requesting that he be contacted so that he could file an incident report. (Rec. Doc. 6, p. 2, ¶ 7) He claims that the safety officer never contacted him. (Rec. Doc. 6, p. 3, ¶ 8) He also claims that in addition to attempting to report his alleged injury to the safety officer, he complained about his alleged injury to his immediate superior and co-worker on the barge. (Rec. Doc. 6, p. 2, ¶ 8) He claims that he made numerous calls to personnel employed by Plaintiffs attempting to file an incident report but that the report was not filed. (Rec. Doc. 6, p. 3, ¶ 9) Although Mr. Fendlason acknowledges that Plaintiffs may not currently be in possession of any medical documentation regarding his injuries, he asserts that he is in possession of medical documentation indicating that he is currently suffering from an inguinal hernia. (Rec. Doc. 6, p. 3, ¶ 10)

Mr. Fendlason also filed a counterclaim with his answer in which he asserts that he was ordered to move, without assistance, extremely heavy pumps and other gear and that in attempting to comply with his orders and over his objection, he suffered an inguinal hernia. (Rec. Doc. 6, p. 4, ¶ 16) Mr. Fendlason alleges that, at the time, it did not occur to him that he had suffered an inguinal hernia and that he thought he suffered from a simple muscle pull, which thereafter prevented him from lifting anything over twenty pounds. (Rec. Doc. 6, p. 4, ¶ 16) Mr. Fendlason further alleged that the injury was a direct result of the unseaworthy condition of the vessel and the negligence of his employer in having the vessel under-manned, under-tooled, and insufficiently staffed to conduct the necessary duties to accomplish the vessel's mission. (Rec. Doc. 6, p. 4, ¶ 17) In addition to seeking maintenance and cure, Mr. Fendlason also sought general damages. (Rec. Doc. 6, p. 5, ¶¶ 18-19) On August 13, 2012, Plaintiffs filed an answer to Mr. Fendlason's counterclaim, denying most of the allegations in his counterclaim. (Rec. Doc. 10)

The parties arranged for Plaintiffs to depose Mr. Fendlason at Mr. Lea's office on October 10, 2012 ("October deposition"); however, Mr. Fendlason did not appear for his deposition. Mr. Fendlason claims in an affidavit that he failed to appear for the October deposition, because he was in Tulsa, Oklahoma where his

brother lives looking for employment at the time. (Rec. Doc. 20-2, p. 1, ¶ 2) Mr. Fendlason also claims in his affidavit that he advised Mr. Lea that he would be unable to attend that deposition prior to the deposition date. (Rec. Doc. 20-1, p. 1, ¶ 2) However, the proces verbal taken on the date of the October deposition reflects that Mr. Lea believed that Mr. Fendlason may not have understood that his deposition was scheduled on that date. (Rec. Doc. 15-2) On November 19, 2012, Plaintiffs served a subpoena to compel Mr. Fendlason's attendance at a deposition scheduled for December 5, 2012 ("the December deposition") on Mr. Fendlason's mother at 39415 South Hoover, Pontchatoula, Louisiana, 70454 ("the South Hoover address"). (Rec. Doc. 15-3)

On November 26, 2012, Mr. Lea moved to withdraw as counsel for Mr. Fendlason, without substitution, asserting that Mr. Fendlason failed to attend his deposition, failed to attend meetings, and failed to return phone calls.[1] (Rec. Doc. 13) Mr. Lea also indicated that although he had notified Mr. Fendlason of his intent to withdraw and of all pending deadlines, and had given him an opportunity to seek substitution of counsel in advance of the filing of his motion to withdraw, Mr. Fendlason had not notified

---

[1] Mr. Lea filed his first motion to withdraw without substitution on November 7, 2012. (Rec. Doc. 11) However, the Court denied that motion, because Mr. Lea failed to comply with the requirements of Local Rule 83.2.11 in that he did not provide Mr. Fendlason's current telephone number, or either serve the motion on Mr. Fendlason by certified mail or provide an affidavit explaining why service had not been made. (Rec. Doc. 12)

him of any substitution. (Rec. Doc. 13) In addition, Mr. Lea provided the Court with Mr. Fendlason's phone number and indicated that the Easterbrook Road address was Mr. Fendlason's mailing address. (Rec. Doc. 13) Mr. Lea attached a certified mail return receipt indicating that Mr. Lea's motion to withdraw was delivered to Mr. Fendlason's agent at the Easterbrook Road address on November 25, 2012. (Rec. Doc. 13-2) On November 28, 2012, the Court granted Mr. Lea's motion to withdraw. (Rec. Doc. 14) In the order granting Mr. Lea's motion to withdraw, the Court ordered Mr. Fendlason to either enroll new counsel of record or contact the Court within thirty (30) days to notify the Court of his intention to proceed *pro se.* However, Mr. Fendlason neither contacted the Court, nor enrolled new counsel during that thirty day time frame. Mr. Fendlason also failed to appear for the December deposition. (Rec. Doc. 15-4, p. 3) Although he admits that he received the subpoena prior to the December deposition, Mr. Fendlason claims that he chose not to attend the December deposition, because he was not represented by counsel at the time. (Rec. Doc. 25-2, p. 2)

On January 9, 2013, Plaintiffs filed a Motion to Dismiss (Rec. Doc. 15) arguing that the action should be dismissed with prejudice under Rule 37 of the Federal Rules of Civil Procedure as a discovery sanction for Mr. Fendlason's failure to attend two depositions or, alternatively, for failure to prosecute. (Rec. Doc.

7

15, pp. 2-3) On January 28, 2013, the Court ordered Mr. Fendlason to appear in Court on February 22, 2013 at 9:30 a.m. to show cause why the Court should not dismiss the action with prejudice for failure to prosecute or, alternatively, as a sanction for Mr. Fendlason's failure to attend his depositions or abide by the Court's November 28, 2012 order that he either enroll new counsel or notify the Court of his intention to proceed *pro se* ("Show Cause Order"). (Rec. Doc. 17) The Court also continued the hearing on Plaintiffs' Motion to Dismiss until February 22, 2013. (Rec. Doc. 17) On January 11, 2012, Plaintiffs served the Motion to Dismiss on Mr. Fendlason's mother at the South Hoover address, along with correspondence from Plaintiffs' attorney to Mr. Fendlason informing him that the hearing on the motion was set on Wednesday, January 30, 2013 and that his deadline to file any opposition to the motion was Tuesday, January 22, 2013. (Rec. Doc. 16-1) On February 3, 2013, Plaintiffs served the Show Cause Order on Mr. Fendlason's mother at the South Hoover address. (Rec. Doc. 19-1) On February 22, 2013, Mr. Fendlason failed to appear in Court for the Show Cause hearing, and the Court granted Plaintiffs' Motion to Dismiss. (Rec. Doc. 20) On February 22, 2013, the Court granted Plaintiffs' motion to dismiss and issued an order dismissing the action with prejudice after Mr. Fendlason failed to appear for the hearing on Plaintiffs' Motion to Dismiss and the Show Cause Order. (Rec. Doc.

21)

On March 4, 2013, after the Court had dismissed the action, Mr. Fendlason filed an ex parte motion to enroll Lawrence Blake Jones and David C. Whitmore ("Mr. Whitmore") as counsel of record. (Rec. Doc. 22) The Court granted the motion to enroll on March 11, 2013. (Rec. Doc. 24) On March 21, 2013, Mr. Fendlason filed the instant motion for reconsideration of the Court's order dismissing the action with prejudice (Rec. Doc. 21) through his new attorney, Mr. Whitmore. (Rec. Doc. 25) Plaintiffs filed their opposition on March 22, 2013. (Rec. Doc. 29)

## PARTIES' ARGUMENTS

Mr. Fendlason contends that he is entitled to reconsideration of the Court's order dismissing the action with prejudice (Rec. Doc. 21) and/or a new trial. Mr. Fendlason asserts that Plaintiffs' Motion to Dismiss was based upon Federal Rules of Civil Procedure 37(b)(2) and 37(d), which is improper because there was no discovery order in this case, and these subdivisions deal with the failure to comply with a discovery order. Mr. Fendlason concedes that when a party fails to to attend his own deposition, dismissal is one of the possible remedies under Rules 37(d)(1)(A)(i) and 37(d)(3); however, he argues that dismissal is too drastic of a remedy in the present matter. Mr. Fendlason argues that under Griffin v. Aluminum Company of America, 564 F.2d 1171, 1172 (5th

9

Cir. 1977), dismissal is only a proper sanction where "a plaintiff's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply." (Rec. Doc. 25-1, p. 3) Mr. Fendlason argues that there was no such bad faith in this case. Mr. Fendlason admits that he failed to attend the October deposition, but states in an affidavit attached to his Motion for Reconsideration that he told his counsel at the time, Mr. Lea, that he could not attend because he was in Oklahoma looking for work. (Rec. Doc. 25-2, ¶ 2) As to the December deposition, Mr. Fendlason argues that he was served at his mother's home instead of his own home. (Rec. Doc. 25-2, ¶ 3) Mr. Fendlason admits that he received the subpoena from his mother "about one to two weeks" after it was served upon her, but asserts that he did not attend the December deposition, because he did not have counsel. (Rec. Doc. 25-2, ¶ 4) Mr. Fendlason claims that the January 28, 2012 Show Cause Order was again served at his mother's home and that he did not receive that Order until after his case had been dismissed. Mr. Fendlason does not give a reason for his failure to act on the Court's November 28, 2012 Order which required him to either enroll new counsel or notify the Court that he would proceed *pro se*. Mr. Fendlason urges that he should not be held responsible for his errors and failures because, under Harden

v. Gordon, 11 F. Cas. 480, 485 (D. Me. 1823), a seaman, such as Mr. Fendlason, is "thoughtless and require[s] indulgence" from the Court.

Mr. Fendlason further asserts that the cases Plaintiffs relied on in their Motion to Dismiss actually support a reversal of the order dismissing the case. Mr. Fendlason asserts that, although Defendants relied on Boudwin v. Graystone Insurance Company Limited, 756 F.2d 399 (5th Cir. 1985) in their Motion to Dismiss, that case actually supports Mr. Fendlason's argument because the Boudwin court required district judges to include on the record findings of facts that lesser sanctions would be inadequate. Mr. Fendlason argues that because the Court made no such finding on the record, the Order granting Plaintiffs' Motion to Dismiss must be vacated.

In their opposition, Plaintiffs assert Mr. Fendlason's motion should be denied, because he offers no new evidence as to why he failed to comply on several occasions and cannot show a manifest error of law or mistake of fact. Plaintiffs assert that there is no manifest error of law, because under Hunting v. BASF Corp., 398 F. App'x. 61, 63 (5th Cir. 2010), dismissal is appropriate "when a party fails to appear for a properly noticed deposition, fails to comply with a discovery order, fails to prosecute his case, or fails to comply with an order of the district court." Id. Thus,

Plaintiffs contend that Mr. Fendlason's motions should be denied, as there was no manifest injustice.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. Bass v. U.S. Dep't of Agric., 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit treats a motion for reconsideration challenging a prior judgment as either a motion "to alter or amend" under Federal Rule of Civil Procedure 59(e) or a motion for "relief from judgment" under Federal Rule of Civil Procedure 60(b). Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds by Little v. Liquid Air Corp., 37 F.3d 1069, 1076 (5th Cir. 1994). The difference in treatment is based on timing. If the motion is filed within twenty-eight days of the judgment, then it falls under Rule 59(e). Id.; FED. R. CIV. P. 59(e). However, if the motion is filed more than twenty-eight days after the judgment, but not more than one year after the entry of judgment, it is governed by Rule 60(b). Id.; FED. R. CIV. P. 60(c). In the present case, Defendants' Motion for Reconsideration (Rec. Doc. 25) was filed on March 21, 2013, which is within twenty-eight days from the order dismissing this matter. (Rec. Doc. 21). As a result, Defendants' Motion for Reconsideration is treated as a motion to alter or amend under Rule 59(e).

Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. Templet v. Hydrochem, Inc., 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." Id.; see also Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 567 (5th Cir. 2003).  Manifest error is defined as "'[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear, visible, unmistakable, indubitable, indisputable, evidence, and self-evidence.'" In Re Energy Partners, Ltd., 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (citations omitted); see also Pechon v. La. Dep't of Health & Hosp., 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (manifest error is one that "'is plain and indisputable, and that amounts to a complete disregard of the controlling law'") (citations omitted). To prevail on a motion under Rule 59(e), the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact. Schiller, 342 F.3d at 567; Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005) (to win a Rule 59(e) motion, the movant "must clearly

establish either a manifest error of law or fact or must present newly discovered evidence").

## DISCUSSION

The Fifth Circuit has held that a motion under Rule 59(e) "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." Templet, 367 F.3d at 478-79. The Court declines to consider Mr. Fendlason's arguments, all of which could have been raised by Mr. Fendlason at the February 22, 2013 hearing. The January 28, 2013 Show Cause Order explicitly instructed Mr. Fendlason to appear in Court on February 22, 2013 and warned him that the Court was considering dismissing the action with prejudice as a sanction for his failure to attend both depositions, failure to prosecute, and failure to abide by the Court's November 28, 2012 Order. In his affidavit, Mr. Fendlason challenges the sufficiency of service of the January 28 Show Cause Order stating: "While I acknowledge that the plaintiffs have submitted an affidavit stating that [the January 28, 2013 Show Cause Order] was again served on my mother, I did not receive that Order prior to the case being dismissed. I do not reside with my mother, but reside at 39483 W. Brickyard Road in Springfield, Louisiana." (Rec. Doc. 25-2, p. 2) The Court finds this excuse unavailing. The fact that the Show Cause Order was served on his mother at her residence, rather than

on Mr. Fendlason at his residence is due to: (a) Mr. Fendlason's unexplained failure to comply with the Court's November 28, 2012 order, and (b) Mr. Fendlason's failure to comply with the Local Civil Rules of the United States District Court for the Eastern District of Louisiana. Had Mr. Fendlason complied with the November 28, 2012 Order and abided by the local rules, he would have received timely notice of the February 22, 2013 hearing and could have raised all of the arguments that he raises in the instant motion at that time.

**A. Mr. Fendlason's Unexplained Failure to Comply with the November 28, 2012 Order**

Mr. Fendlason's statement in his affidavit that he chose not to attend the December deposition because he was unrepresented at the time indicates that Mr. Fendlason was aware of the November 28, 2012 Order granting Mr. Lea's motion to withdraw by December 5, 2012, at the latest. Given that the same November 28, 2012 Order that granted Mr. Lea's motion to withdraw also instructed Mr. Fendlason to enroll new counsel or contact the Court within thirty days to notify the Court of his intention to proceed *pro se*, the Court can reasonably infer that Mr. Fendlason was aware of the Court's instructions by December 5, 2012 and simply disregarded them. Mr. Fendlason's failure to offer any explanation for his non-

compliance with the November 28, 2012 Order bolsters the Court's conclusion. Had Mr. Fendlason enrolled a new attorney within thirty days of the November 28, 2012 Order, the January 28, 2013 Show Cause Order could have been served on his new attorney. Alternatively, had he contacted the Court within that time frame, the Court could have obtained his correct address before issuing the January 28, 2013 Show Cause Order. In either case, but for Mr. Fendlason's disregard of the Court's November 28, 2012 Order, he would have received timely notice of the February 22, 2013 hearing and could have raised his arguments there.

**B. Mr. Fendlason's Failure to Comply with the Local Rules**

Second, whether or not Mr. Fendlason ignored the Court's instructions in the November 28, 2012 Order, he was clearly aware that Mr. Lea was no longer representing him by December 5, 2012. At that point, as a *pro se* litigant, he was obligated to familiarize himself with and abide by the Local Civil Rules of the Eastern District of Louisiana. Local Rule 83.2.7 provides in pertinent part that "[e]veryone who appears in court in proper person must be familiar with these rules." Local Rule 11.1 provides that "[e]ach attorney and *pro se* litigant has a continuing obligation to promptly notify the court of any address or telephone number change." Thus, once Mr. Fendlason was a *pro se* litigant, it was his

16

continuing responsibility to provide the Court with his current address, and had he done so any time during the nearly two month span between his second deposition on December 5, 2012 and the January 28, 2013 Show Cause Order, he would have received timely notice of the February 22, 2013 hearing and could have raised the arguments asserted in the instant motion at that hearing. Since Mr. Fendlason could have raised all of his arguments before the Court issued the February 22, 2013 Order dismissing the case with prejudice, the Court will not consider them.

Accordingly,

**IT IS HEREBY ORDERED** that Mr. Fendlason's Motion for Reconsideration and/or New Trial **(Rec. Doc. 25)** is **DENIED**.

New Orleans, Louisiana this 6th day of August, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE